**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **Cheyenne Denson,**<br>**Hannah White,**<br>**Joel White,** and<br>**Jeffrey Flagg,**<br>Individually and on behalf of all other<br>similarly situated current and former employees | **CIVIL ACTION NO.** |
| *Plaintiffs*<br>v. | **COLLECTIVE ACTION** |
| **Debbie Does Doberge, LLC,**<br>**Charles Mary IV,**<br>**Charlotte McGehee,** and<br>**Faith Simmons.** | |
| *Defendants.* | |

## <u>COMPLAINT</u>

**NOW INTO COURT,** through undersigned counsel, comes Plaintiffs Cheyenne Denson,

Joel White, Hannah White, and Jeffrey Flagg on their own behalf and on behalf of those similarly

situated (at times hereinafter referred to collectively as "Plaintiffs"), who allege as follows:

### I.     INTRODUCTION

1.     Plaintiffs are essential workers who worked during the COVID-19 pandemic to

reopen and operate the cake shops and restaurants operated by Defendants. Upon returning to work

during the COVID-19 pandemic, Defendants lowered their salaries below the Fair Labor Standards

Act, 29 U.S.C. §§ 201, *et seq*. (hereinafter "FLSA") salary basis cut off, required them to work

overtime and yet, refused to pay them for that overtime. Plaintiffs now bring this action because

Defendants failed to pay them  any wages for any overtime worked. Plaintiffs bring this action on

behalf of themselves and other similarly situated current and former employees of Defendants and who elect to opt-in to this action pursuant to the FLSA's collective action provision, 29 U.S.C. § 216(b). Plaintiffs also bring this action on behalf of themselves and all similarly situated current and former employees who elect to opt-in to this action to remedy Defendants' violations of Louisiana state law, including, but not limited to, the Louisiana Wage Payment Act (hereinafter "LWPA") and the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq*. (hereinafter "LUPTA"). Further, after Plaintiffs were forced out of their positions, Defendants failed to provide notice of their right to employer paid COBRA coverage under the American Rescue Plan Act, causing them even further economic harm.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. §1331 because they arise under the FLSA and the American Recovery Plan Act. Further, pursuant to 28 U.S.C. § 1367, this Court has ancillary jurisdiction over Plaintiffs' state law causes of action, including class claims under Rule 23 of the Federal Rules of Civil Procedure, as these claims arise out of the same transaction or occurrence as the underlying FLSA claims.

3.    This Court has personal jurisdiction over all Defendants, as they reside in and regularly conduct business in Orleans Parish and Jefferson Parish, which are both located in the Eastern District of Louisiana. For these same reasons, venue is proper in this Court under 28 U.S.C. § 1391(b) and § 1391(c). Further, venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of Louisiana.

### III.   PARTIES

#### A.   Plaintiffs

4.      Named Plaintiff, Cheyenne Denson, is an individual of the age of majority and is a citizen of the United States of America who resides in the Eastern District of Louisiana. They performed their job duties for Defendants entirely in the Eastern District Louisiana.

5.      Named Plaintiff, Joel White, is an individual of the age of majority and is a citizen of the United States of America who resides in the Eastern District of Louisiana. He performed his job duties for Defendants entirely in the Eastern District Louisiana.

6.      Named Plaintiff, Hannah White, is an individual of the age of majority and is a citizen of the United States of America who resides in the Eastern District of Louisiana. She performed her job duties for Defendants entirely in the Eastern District Louisiana.

7.      Named Plaintiff, Jeffrey Flagg, is an individual of the age of majority and is a citizen of the United States of America who resides in the Eastern District of Louisiana. He performed his job duties for Defendants entirely in the Eastern District Louisiana.

8.      Named Plaintiffs are one of more than 30 employees of Defendants. Plaintiffs seek to assert their claims individually, and on behalf of all of those similarly situated, who are currently employed by Defendants and/or who have been employed by Defendants any time from May 2020, pursuant to 29 U.S.C. § 216, as set forth in detail below.

9.      The FLSA and Rule 23 classes of similarly situated employees (hereinafter "Putative Class Members") include, but are not limited to, non-exempt employees.

10.     Plaintiffs' written consent to join this FLSA collective action is attached to this Complaint as Exhibits A-D.

**B.   Defendants**

11.   Defendant Debbie Does Doberge, LLC (hereinafter sometimes referred to as "DDD") is a Louisiana Limited Liability Company domiciled in Kenner, Louisiana, and with locations in New Orleans and Kenner, Louisiana, in the Eastern District of Louisiana.

12.   Defendant Charles Mary IV is the Registered Agent, and co-owner of DDD. Upon information and belief, he is domiciled in Jefferson Parish, Louisiana. At all times relevant to this complaint, he had the power to hire and fire employees and supervised all terms and conditions of employment including all day-to-day operations, the payment of employee wages, and hours worked.

13.   Defendant Charlotte McGehee is a co-owner of DDD. Upon information and belief, she is domiciled in Jefferson Parish, Louisiana. At all times relevant to this complaint, she had the power to hire and fire employees and supervised all terms and conditions of employment including all day-to-day operations, the payment of employee wages, and hours worked.

14.   Defendant Faith Simmons is a co-owner of DDD. Upon information and belief, she is domiciled in Orleans Parish, Louisiana. At all times relevant to this complaint, she had the power to hire and fire employees and supervised all terms and conditions of employment, including all day-to-day operations, the payment of employee wages, and hours worked.

## IV.   FACTUAL BACKGROUND

15.   DDD owns and operates Bakery Bar located at 1179 Annunciation Street in New Orleans, Louisiana 70130 and Debbie on the Levee located at 2118 Reverend Richard Wilson Drive in Kenner, Louisiana 70062.

16.   Plaintiffs Cheyenne Denson, Bar Manager of Bakery Bar, and Hannah White, General Manager of Debbie on the Levee, were both long-term employees of DDD who were paid $40,000 a year in until early 2020.

4

17.   Plaintiff Joel White, another long-term employee and DDD's Executive Chef, was paid $42,000 a year in until early 2020.

18.   Plaintiff Jeffrey Flagg, another long-term employee, worked as a bartender at Debbie on the Levee and Bakery Bar. Up until early 2020, he made $6 an hour as a bartender, and $10 an hour for time he spent working in the kitchen. He also received all tips customers paid to him to supplement his wages. As an hourly employee, he was also paid overtime for hours worked over 40 hours a week.

19.   All four were furloughed in March 2020 as part of a company-wide temporary lay-off related to COVID-19.

20.   Soon after, in April 2020, DDD received a Paycheck Protection Program ("PPP") Loan from the Small Business Administration for $149,390.

21.   Despite this, DDD left all employees laid off, and without any income from April to October 2020.

22.   DDD later reported to the federal government that they utilized $119,512 of the PPP loan on payroll for approximately 32 employees. The federal government forgave this loan in its entirety at the expense of taxpayers.

23.   Months after receiving a six-figure loan from the government to cover employee salaries, DDD finally rehired some of its employees, but only at a substantial pay cut.

24.   DDD co-owner, Defendant Charles Mary IV, rehired Joel in late August 2020 to assist with its re-opening efforts. In September 2020, Mr. Mary reduced Joel's salary, first to just $673/week in checks from his personal account with no withholdings removed as required by state and federal law, and then, to a salary of $35,000 year paid through the business.

25.     In addition, Mr. Mary promised that he would also pay Joel additional compensation based on a service fee added to all in-person orders and tips taken from customarily tipped staff at Bakery Bar and Debbie on the Levee and shared between the ownership, management and the staff who actually earned the tip. This tip pooling approach is a blatant violation of 29 USC §203 (m)(2)(B), which provides: "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

26.     However, in August 2020 and September 2020, since the restaurants were not open, no tips were collected. As a result, Joel earned $673.07 per week.

27.     Next, in September 2020, Mr. Mary, and co-owner Defendant Charlotte McGehee, re-hired Hannah White, as General Manager of the Debbie on the Levee location, and Cheyenne as Bakery Bar's Bar Manager.

28.     In September 2020, Mr. Mary and co-owner, Defendant Charlotte McGehee, re-hired Hannah White as General Manager of the Debbie on the Levee location, and Cheyenne Denson as Bakery Bar's Bar Manager.

29.     Upon re-hiring Hannah and Cheyenne, Mr. Mary and Ms. McGehee reduced both of their salaries to $35,000/year and promised that after reopening to the public in October 2020, they would receive additional compensation based on tips taken from customarily tipped staff at Bakery Bar and Debbie on the Levee and shared between ownership, management and the staff who earned the tips.

30.     In addition, Defendants employed approximately three other managers and also compensated them $35,000 a year.

31.     On September 28, 2020, Cheyenne emailed Ms. Simmons, asking for clarification on whether managers and owners would receive tips.

32.     On the same day, Ms. Simmons confirmed that management and ownership would be taking a portion of the tips earned by customarily tipped staff, and a "service fee" tacked on to every customer's order. Ms. Simmons explained that: "the tip split does include Charlotte [McGehee, co-owner], me, Melody [Keel, Customer Service and Shipping Specialist], and Christina [Moreno, Baker], as well as the other bakery employees. (Tim [Durnil, Head Baker] will be coming back in October too.) Charles is exempting himself from the tip share for at least the first month that we're open." Ms. Simmons went on to explain that "[e]veryone gets a tip share because everyone is salaried now and every employee's contributions are valuable to the final customer experience."

33.     Mr. Mary also informed Joel and Hannah that the only reason he was initially not receiving tips was part of an attempt to continue to receive Medicaid.

34.     In anticipation of his return, in September 2020, Defendants informed Jeffrey that he, and all other non-managerial employees, would now would earn a salary of $30,000, were expected to regularly work over 40 hours a week, would not be paid overtime, and would have their tips taken away from them, and distributed to their managers, and owners.

35.     Jeffrey returned to his first shift on September 21, 2020. By November 2020, he was regularly working overtime. He was not paid minimum wage, let alone overtime, for any hours he worked over 40 hours a week. Further, every shift, the tips he was paid by customers were taken from him and given to managers and owners.

36.     In October 2020, Mr. Mary returned Joel to his prior position as Executive Chef at Bakery Bar and, like Cheyenne and Hannah, promised Joel that he would also receive additional

compensation based on an additional service fee added to all in-person orders, and tips taken from customarily tipped staff at Bakery Bar and Debbie on the Levee and shared between the ownership, management and the staff who actually earned the tip.

37.     The four named Plaintiffs are just a few of the dozens of employees subjected to this illegal payment scheme.

38.     All Plaintiffs were paid below the salary basis cut off, as their salaries were  less than the FLSA's statutory minimum of \$684/week for salaried employees. Defendants paid managers a salary of \$673.07/week and paid non-managers a salary of just \$576.92/week.

39.     Although managers also received additional wages from allocations from the service fee and illegal tip pool among customarily tipped staff, ownership, and management, that "tip pool" pay fluctuated based on the tips paid by customers to customarily tipped staff.

40.     Although non-managerial servers and bartenders also earned tips from customers, Defendants then stole and redistributed these employees' tips amongst themselves and other managers.

41.     DDD did not pay any employees paid time and a half for any overtime worked. DDD did not even pay employees minimum wage for any hours worked over 40 hours a week.

42.     DDD made no effort to hide its illegal actions. On October 9, 2020, in its statement concerning the reopening in October 2020 Defendants stated "some basic values of Debbie Does Doberge. . . . . We believe that each person has value, that Black Lives Matter, that people should be paid a living wage for their work" and that "[t]he hospitality industry in the US was built on the backs of enslaved people, and in the years since has undermined and destabilized people who are marginalized in a variety of ways."

43.     Despite these lofty goals and promises of a "living wage," and recognizing that the hospitality industry (and tipping) has long taken advantage of marginalized communities, in the very same letter, Defendants admitted that they were now utilizing a new, and blatantly illegal payment scheme that failed to meet even the low floor for payment required by the FLSA. Defendants explained, that customers would pay a mandatory 15% and then, that "service fee, as well as any additional credit card and cash tips will be split evenly among all employees, according to each person's number of hours worked per week." Further, they emphasized that all "team members will earn a starting base salary of $30,000 annually as well as a share of service fees and gratuities. Management positions, including individuals with ownership stakes, will have a salary of $35,000 annually, also earning the service fee/gratuity share." Further, Defendants were clear that overtime work was likely to occur and that "[s]alaried employees will be expected to work no more than 50 hours per week[.]" Not only was this tip pool sharing between management and non-management employees a clear violation of the FLSA, but all employees were being paid below the salary basis cut off, and therefore, were not exempt from overtime.

44.     Defendants also advertised on social media about their plans to violate the FLSA with an illegal tip pool, describing the mandatory 15% on all orders and noting "reopening soon![] This money will go directly into the hands of all of our staff, from dishwasher to Debbie, to guarantee all of our staff earns a livable wage." Of course, Defendants did not inform the public that the "livable wage" was so low that employees were paid $0 an hour for all overtime worked.

45.     As described above, all Plaintiffs worked significant overtime most weeks between their rehiring and April 2021—working as many as 36.22 hours of overtime in a single week. They were not paid for this overtime – not even minimum wage.

46.     Due to unlivable wages, all four named Plaintiffs quit in March and April 2021.

47.     After separation from employment, Defendants failed to provide any of the named Plaintiffs with notice that they were entitled to have DDD subsidize the cost of COBRA payments until September 30, 2021, as required under the American Recovery Plan Act.

**A.     Coverage Under the FLSA**

48.     At all times relevant to this Complaint, Defendants have been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

49.     Together, all Defendants were joint employers of Plaintiffs and putative class members.

50.     At all times relevant to this Complaint, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

51.     At all times relevant to this Complaint, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203, in that Defendants operate an enterprise that has employees engaged in commerce and has annual gross revenues that exceed $500,000.00. 29 U.S.C. § 203(s)(1)(A).

52.     At all times relevant, Plaintiffs and the Putative Class Members were individual employees engaged in performing activities within the meaning of 29 U.S.C. § 203(r) as required by 29 U.S.C. §§ 206, 207.

53.     Plaintiffs bring this action on behalf of the following class of similarly situated individuals: All current and former employees of Defendants who participated in the illegal tip pool, and were paid below the salary basis cut off, whether currently employed by Defendants or employed by Defendants since April 2020, who elect to opt-in to this collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

54.     The members of the class are so numerous that joinder of all other members of the class is impracticable. While the exact number of the other members of the class is unknown to

Plaintiffs at this time and can only be ascertained through applicable discovery, Plaintiffs believe there are at least 30 individuals in the class.

55.     The claims of Plaintiffs are typical of the claims of the class. Plaintiffs and the other members of the class work or have worked for Defendants and were subject to the same operations, compensation, classification and timekeeping plans, policies, and practices, including the failure to pay Plaintiffs and other misclassified employees overtime compensation under the FLSA for all hours worked in excess of forty (40) hours per week during the relevant statutory limitations period.

56.     Collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the FLSA claims. The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek redress for the wrongs done to them.

57.     Plaintiffs and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented and administered by Defendants.

## V.     CAUSES OF ACTION

### COUNT 1
### VIOLATIONS OF THE FLSA
### (AGAINST ALL DEFENDANTS)

58.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

59.     The FLSA requires employers to compensate employees "at a rate not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

60. Plaintiffs and the putative class do not fall within any exemption from the FLSA and were required to be paid according to the dictates of that section.

61. At all relevant times, Defendants and their representatives directed the means and manner by which Plaintiffs and the putative class were compensated.

62. During the relevant time period, Defendants violated the FLSA's overtime pay requirements by employing Plaintiffs and the putative class to engage in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating Plaintiffs for overtime at a rate no less than one and one-half times her regular rate in violation of 29 U.S.C. §§ 206 and 207(a)(1) and 29 C.F.R. § 778.315.

63. Defendants knew Plaintiffs and the putative class performed work that required that they be paid minimum wage and overtime compensation under the FLSA. Nonetheless, Defendants operated under the aforementioned centralized and uniform plans, policies, and practices with the intent to deprive Plaintiffs and putative class members they employed of such overtime compensation in violation of the FLSA.

64. No exemption excused Defendants from paying Plaintiffs and the putative class overtime for the overtime hours they worked.

65. Defendants' practice of failing to correctly pay Plaintiffs for overtime hours is a violation of the FLSA.

66. Defendants also engaged in the practice of failing to pay minimum wage for all hours worked in violation of the FLSA.

67. Further, Defendants stole employees tips by creating an illegal tip pool in violation of the FLSA.

68. The illegal pattern or practice on the part of Defendants with respect to Plaintiffs' overtime compensation was known by Defendants to be in violation of the FLSA.

69. Defendants knew of its requirements to abide by the FLSA and did not make a good faith effort to comply with the FLSA.

70. Defendants' refusal and/or failure to properly pay for all hours worked, and to pay for overtime was done so knowingly, willfully, or in reckless disregard in carrying out its illegal pattern or practice.

71. The decision by Defendants not to properly calculate and compensate Plaintiffs' wages was neither reasonable, nor in good faith.

72. Further, Section 211 of the FLSA further requires employers to keep accurate records of data related to their employees' "wages, hours, and other conditions and practice of employment." 29 U.S.C. § 211(a), (c).

73. Defendants failed and/or refused to document the hours Plaintiffs worked each workweek, Plaintiffs' total overtime earnings for the workweek, and all additions to or deductions from Plaintiffs' wages.

74. Defendants violated the FLSA by failing to keep records regarding Plaintiffs' employment and compensation in accordance with the requirements of 29 U.S.C. §211.

## COUNT 2

### AMERICAN RESCUE PLAN ACT OF 2021 ("ARPA")
### (AGAINST DEBBIE DOES DOBERGE, LLC)

75. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

76. Defendant sponsors a group health plan, which is a covered health plan under the Employee Retirement Income Security Act ("ERISA").

13

77.     Plaintiffs Cheyenne Denson, Joel White and Hannah White were qualified beneficiaries under Defendant's health plan because they were covered individuals on the group health plan during their employment.

78.     Plaintiffs Cheyenne Denson, Joel White and Hannah White suffered a qualifying event when they were separated from their employment in 2021.

79.     Defendant was required to provide notice of coverage within 14 days of Plaintiffs Cheyenne Denson, Joel White and Hannah Whites' separation, and that notice was required to include fourteen categories of information as required by 29 CFR § 2590.606-4(b)(4).

80.     Defendant and Plaintiffs Cheyenne Denson, Joel White and Hannah White had certain rights and obligations under COBRA and ERISA. As a result, both fall under the purview of the newly enacted ARPA.

81.     The ARPA provides for an employer-paid COBRA subsidy whereby employers must cover 100% of an employee's cost of continuing group health coverage (including medical, dental, and vision coverage) from April 1, 2021, through September 30, 2021.

82.     The ARPA requires employer-paid coverage for Plaintiffs Cheyenne Denson, Joel White and Hannah White, as they lost their health care coverage on account of their separation from employing in 2021.

83.     The ARPA became effective prior to their discharge, and required that employers provide notices to employees of the newly created federal right to employer sponsored health coverage until September 30, 2021.

84.     The ARPA required employers to give notice to these individuals by May 31, 2021, and that notice had to occur regardless of whether an individual requested that notice.

85.     Plaintiffs Cheyenne Denson, Joel White and Hannah White never received notice regarding their rights under the ARPA.

86.     As a result of the failure to provide timely notice, Plaintiffs Cheyenne Denson, Joel White and Hannah White suffered economic losses as a result of the failure to provide Plaintiffs notice of her right to continued coverage.

## COUNT 3
### VIOLATIONS OF THE LWPA – UNPAID WAGES
### LA. R.S. 23:631 ET. SEQ.
### (AGAINST DEBBIE DOES DOBERGE, LLC)

87.     Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

88.     The LWPA requires employers to inform employees at the time of hire "what wages they will be paid, the method in which they will be paid and the frequency of payment along with any subsequent changes thereto." La. R.S. 23:633(A).

89.     Through the various schemes outlined herein, Defendants employed policies, plans, and/or practices resulting in Defendants failing and/or refusing to tender owed wages to Plaintiffs and those similarly situated at the rate and frequency agreed upon as required by law and public policy.

90.     Defendants violated the LWPA by failing and/or refusing to pay earned wages to Plaintiffs, and those similarly situated, at the frequency and rates agreed upon.

91.     Further, under the LWPA, Defendants were required to remit all of the overdue/final wages owed Plaintiffs, and those similarly situated, within fifteen (15) days of termination of their employment. La. R.S. 23:631.

92.     Plaintiffs submitted numerous amicable demands for Defendants to remit all earned overdue wages including owed bonuses and other compensation, under La. R.S. 23:632.

93.     Defendants' refusal to tender all earned wages to Plaintiffs, and those similarly situated to them, after the termination of their employment is contrary to law and public policy.

94.     Defendants' actions, contractually or otherwise, to impute fines, penalties, reductions, arbitrary "training" expenses, or any other scheme to convert Plaintiffs' earned wages, and those similarly situated to them, is an inexcusable attempt to justify wage theft and is contrary to law and public policy.

95.     Failure to pay said wages to Plaintiffs and those similarly situated results in mandatory penalty wages and attorneys' fees pursuant to La. R.S. 23:632 *et seq*.

## COUNT 4
### VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT
### LA. R.S. 51:1401, ET SEQ.
### (AGAINST DEBBIE DOES DOBERGE, LLC)

96.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth therein.

97.     The Louisiana Unfair Trade Practices Act (LUTPA) prohibits "unfair and deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A).

98.     Defendants have unilaterally withheld Plaintiffs earned wages, or otherwise created schemes whereby these owed wages would be converted from Plaintiffs to Defendants.

99.     Defendants' violations represents a practice of knowing and willful behavior.

100.    Defendants brazenly advertised their unlawful withholding of Plaintiffs' earned wages.

## COUNT 5
### CONVERSION AND MISAPPROPRIATION
### (AGAINST DEBBIE DOES DOBERGE, LLC)

101.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

102.    Defendants intentionally interfered with and exercised dominion and control over wages and compensation that Plaintiffs had the legal right to possess as herein alleged.

103.    As a result of Defendants' violations of La. Civ. Code Art. 2315, Plaintiffs are entitled to recover the wages unlawfully withheld by Defendants, costs of the action, and pre- and post-judgment interest pursuant to La. Civ. Code Art. 2315.

## COUNT 6
### BREACH OF CONTRACT AND DETRIMENTAL RELIANCE,
### AND ALTERNATIVE CLAIM OF UNJUST ENRICHMENT
### (AGAINST DEBBIE DOES DOBERGE, LLC)

104.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

105.    Defendants breached its contractual obligations to Plaintiffs and those similarly situated under La. Civ. Code Art. 1994 by failing to pay agreed upon, and properly calculated, wages under the FLSA.

106.    Plaintiffs, and those similarly situated, detrimentally relied on Defendants' promise to timely pay properly calculated wages and benefits, as well as their agreed upon stipends and non-discretionary bonuses. La. Civ. Code 1967.

107.    Alternatively, where Defendants' unlawful actions did not concern those breaches of contractual obligations, as a direct and proximate result of the acts alleged herein, Defendants wrongfully deprived Plaintiffs and those similarly situated of substantial wages and assets and

were unjustly enriched by their direct receipt and retention of monies earned by the employees, and which were intended to be paid towards their hourly wage. *See* La. Civ. Code Art. 2298.

108.    Defendants enriched themselves without cause as a result of refusing to pay Plaintiffs all wages to which they are entitled.

### COUNT 7
### QUANTUM MERUIT
### (AGAINST DEBBIE DOES DOBERGE, LLC)

109.    Defendants hold money that in equity and good conscience belongs to the members of the class because Defendants were paid money through the illegal tip pool for the labor performed by the Plaintiffs and class members, while Defendants paid said class members for less than all of their time worked on behalf of Defendants without Defendants paying the class members for such work. Further, Defendants hold the unpaid overtime wages that were withheld from members of the class.

### VI.    COLLECTIVE ACTION ALLEGATIONS - 29 U.S.C. § 216(B)

110.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

111.    A large but unknown number of Defendants' employees have been damaged by patterns, practices and/or policies which constituted a willful violation of the FLSA in two different locations in New Orleans, Louisiana and Kenner, Louisiana.

112.    Named Plaintiffs have been paid in the same or similar manner as the Putative Class members and were not properly compensated as required by the FLSA. Neither Plaintiffs nor Putative Class Members were paid on exempt from overtime, they were at all times covered by the FLSA, and they were all improperly paid by Defendants.

113.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to prosecute her FLSA claims as a collective action on behalf of the members of the putative class which includes all employees

18

employed by Defendants at any time from August 2020 through entry of judgment in this matter who worked overtime hours for which they were not fully compensated.

114.    The affected employees falling within the class include all of employees for the indicated period, because all such employees were subject to Defendants' uniform refusal to pay overtime and use of an illegal tip pool.

115.    Plaintiffs seek 216(b) certification of Defendants' employees who worked overtime for Defendants at any point from August 2020 through entry of judgment.

116.    Defendants' failure to pay properly calculated wages, as required by the FLSA, results from a generally applicable systematic policy and/or practice which is not dependent on the personal circumstances of the Putative Class Members. Thus, Plaintiffs' experiences are typical of the experiences of the Putative Class Members.

117.    This action is properly maintained as an FLSA collective action because Plaintiffs are similarly situated to the Putative Class Members with respect to Defendants' timekeeping, payroll, and operational plans, policies, and practices. Plaintiffs and the Putative Class Members were subjected to Defendants' aforementioned centralized and uniform plans, policies, and practices of improperly calculating and paying overtime.

118.    The FLSA class is so numerous that joinder of all members is impracticable. Although the data required to calculate the precise size of the class is within the sole control of Defendants, Plaintiffs believe the putative class consists of at least 30 current and former employees of Defendants.

119.    Plaintiffs will fairly and adequately protect the interests of the Putative Class Members, and have retained counsel experienced and competent in the field of wage and hour law

and collective action litigation. Plaintiffs has no interest that is contrary to or in conflict with the interests of any of the Putative Class Members.

120.    The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the FLSA claims. Defendants have acted or refused to act on grounds generally applicable to FLSA Putative Class Members. The prosecution of separate actions could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, place a substantial and unnecessary burden on the courts and/or substantially impair the ability of FLSA Putative Class Members to protect their interests.

121.    Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

122.    The FLSA 216(b) collective action class may be defined as: "All current and former employees employed by Defendants' at any time from August 2020 prior to the commencement of this lawsuit, through entry of judgment."

123.    Based on nature of Defendants' violations, and the facts and circumstances surrounding their communications to employees, Putative Class Members should be notified of this action, given the chance to join pursuant to 29 U.S.C. § 216(b), and be allowed to equitably toll the limitations period.

## VII.    RULE 23 CLASS ACTION ALLEGATIONS

124.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

125.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and pursuant to 28 U.S.C. § 1367, Plaintiffs seek to prosecute Louisiana state law claims for Defendants' violations of the LWPA; conversion and misappropriation; breach of contract and detrimental reliance or, in the alternative, unjust enrichment; and quantum meruit, as class actions against Defendants.

126.    Plaintiffs seeks Rule 23 certification of a class of the all current and former employees employed by Defendants' at any time from August 2020 through entry of judgment (hereinafter "the Class").

127.    Plaintiffs bring this action on their own behalf, individually, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following sub-classes of individuals:

> **ALL INDIVIDUALS WHO ARE CURRENTLY EMPLOYED BY DEFENDANTS, AND/OR HAVE BEEN EMPLOYED FROM AUGUST 2020, WITHOUT MEETING MINIMUM WAGE OR OVERTIME COMPENSATION REQUIREMENTS.**

128.    Plaintiffs are a member of each Class they seeks to represent in this action under Rule 23 of the Federal Rules of Civil Procedure.

129.    The Class, including sub-classes, are sufficiently numerous that joinder of all members is impractical, thereby satisfying Federal Rule of Civil Procedure 23(a)(1). There are dozens of class members during the applicable time period of these claims.

130.    All members of the classes share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). That is, all Putative Class Members share the questions of whether Defendants' actions to, contractually or otherwise, collect tips and redistribute them amongst owners, managers, and the customarily tipped staff, refuse to pay overtime, and refuse to pay all wages upon termination, , are contrary to law

A.    **Causes of Action for Rule 23 Class Members**

1.    *Violations of the LWPA*

131.    Through the various schemes outlined herein, Defendants employed policies, plans, and/or practices resulting in Defendants' failure and/or refusal to tender earned wages to Plaintiffs, and those similarly situated, at the rate and frequency agreed upon, and as required by law.

21

132.    Defendants' actions, contractually or otherwise, to collect tips and redistribute them amongst owners, managers, and the customarily tipped staff or any other scheme to convert employees' earned wages to Defendants is an inexcusable attempt to justify wage theft and constitute violations of the LWPA.

### 2.   *Conversion and Misappropriation*

133.    Plaintiffs, and those similarly situated, incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

134.    Plaintiffs and the Putative Class Members had/have all legal rights to the possession of all their earned wages, Defendants' retention and use of the employees' wages are inconsistent with the employees' right of ownership, and Defendants' use of the employees' earned wages constitutes a wrongful taking.

### 3.   *Breach of Contract/Detrimental Reliance and, Alternatively, Unjust Enrichment*

135.    Defendants' failure to abide by employment contracts with Putative Class Members is also breach of its obligations under La. Civ. Code Art. 1994. The reasonable value of the breach of contract with respect to the Rule 23 class is the difference between the amount class members were owed , and the amount they were actually paid.

136.    Plaintiffs, and those similarly situated, detrimentally relied on Defendants' promise to timely pay properly calculated wages and benefits.. La. Civ. Code 1967.

### 4.   *Quantum Meruit*

137.    Plaintiffs assert a quantum meruit claim that they and each member of the proposed Rule 23 class provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants. The reasonable value of the services provided, and not paid

for by Defendants with respect to the Rule 23 class, is the difference between the amount class members were owed per the work performed, and the number of deductions and/or fines Defendants imputed onto the earned wages of these employees. This includes all hours for which Defendants deducted earned wages from its employees upon termination, and the value of said wages that should have been used to enrich the lives of the Putative Class Members, but was instead used to enrich Defendants

### B.    Requirements for Rule 23 Class Action are Satisfied

#### 1.    *Numerosity of the Class*

138.    The Class are sufficiently numerous that joinder of all members is impractical, thereby satisfying Federal Rule of Civil Procedure 23(a)(1). There are dozens of class members during the applicable time period of these claims.

139.    Although the data required to calculate the precise size of the proposed Rule 23 classes is within the sole control of Defendants, Plaintiffs believe that Defendants currently employ more than 30 individuals. Most of these individuals would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, requisite legal knowledge of their claims, or fear retaliation

#### 2.    *Questions of Law or Fact Common to the Class*

140.    All members of the classes share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). That is, all Putative Class Members share the questions of whether Defendants' actions, refusing to pay all wages, are contrary to law.

141.    Through the various schemes outlined herein, Defendants employed policies, plans, and/or practices resulting in Defendants' failure and/or refusal to tender earned wages to Plaintiff, and those similarly situated, at the rate and frequency agreed upon, and as required by law.

142.     Defendants' actions, contractually or otherwise, to collect tips and redistribute them amongst owners, managers, and the customarily tipped staff, refuse to pay overtime, or any other scheme to convert employees' earned wages to Defendants is an inexcusable attempt to justify wage theft and is contrary to law and public policy.

143.     Questions of law and fact common to the proposed Rule 23 classes predominate over questions that may affect only individuals because Defendants has acted on grounds generally applicable to all class members. Among the common questions of law and fact common to Plaintiffs and other members of the Rule 23 Classes are:

   a.  whether Defendants refused to pay all wages during employment, or upon termination to class members;
   b.  whether Defendants received and accepted valuable services from the class members while knowing that the class members expected to be compensated for said services at the rate and frequency agreed upon;
   c.  whether Defendants were unjustly enriched by holding money which in equity and good conscience belonged to the class members; and
   d.   whether Defendants are liable for the damages claimed hereunder, including but not limited to class members' actual damages, attorney's fees, and costs.

144.     Further, by constantly and continuously failing to pay its former employees all of their wages in accordance with LA. R.S. 23:621, *et seq*., Defendants created a scenario where questions of law and fact common to Louisiana putative class members predominate over any questions affecting individual members.

### 3.  *Plaintiff's Claims are Typical of the Claims of the Class*

145.     Defendants' collection and redistribution of tips amongst owners, managers, and the customarily tipped staff and refusal to pay overtime, was not the result of any Plaintiff-specific circumstances. Instead, Defendants' actions, contractually or otherwise, to convert earned wages and refusing to pay all wages upon termination arose from its common compensation and payroll

policies and practices, which it applied to Plaintiffs and Putative Class Members at its facilities in the State of Louisiana and during the class period

146.    Again, a class action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable.

147.    Inasmuch as the damages suffered by individual members of the proposed Rule 23 classes may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to individually seek redress for the wrongs done to them. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Consequently, Plaintiffs are entitled to pursue their Louisiana state law claims as class actions, pursuant to Federal Rule of Civil Procedure 23(b)(3). Furthermore, management of this suit as a class action will serve judicial economy.

### 4.  *Fair and Adequate Protection of Class Interests*

148.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Further, they have retained competent legal counsel experienced in representing classes of employees against their employers related to their claims of unpaid wages under the law, thereby satisfying Federal Rule of Civil Procedure 23(a)(4).

149.    Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

150.    The Rule 23 Class can be defined as:

All current and former employees of Defendants, who have been employed at any time from August 2020 through the present, and have:

    (1) not been timely paid all earned wages by Defendants, or

    (2) had earned wages reduced for any reason, including for improper tip sharing.

## VIII.   DAMAGES SOUGHT

151.    Plaintiffs are entitled to recover their unpaid hours falling below the minimum wage required by the FLSA and an amount equal to one and one-half times the rate of pay for all overtime worked all of their unpaid overtime and minimum wage compensation as liquidated damages plus liquidated damages, attorney's fees, and costs.

152.    Plaintiffs are entitled to recover civil penalties, fees and costs under the ARPA.

153.    Under state law, Plaintiffs are entitled to recover emotional damages, unpaid wages, lost future wages, compensation for fines, and deductions, 90 days of penalty wages, treble damages, costs, attorney fees, and prejudgment and post-judgment interest.

154.    Plaintiffs and the proposed Rule 23 class members are entitled to recover all actual damages incurred by them under the alternative theories of unjust enrichment, detrimental reliance, quantum meruit, money had and received, and for failure to pay wages under LA. R.S. 23:621, *et seq*., as well as emotional damages, unpaid wages, lost future wages, compensation for fines, and deductions, 90 days of penalty wages, treble damages, costs, and attorney fees, pursuant to La. R.S. 23:632. The proposed Rule 23 class members are also entitled to prejudgment and post-judgment interest.

## IX.   RELIEF SOUGHT

155.    WHEREFORE, Plaintiff, and those similarly situated, pray for a judgment against Defendants as follows:

    e.   Damages, penalties, costs, fees and interest as described above;

    f.   For certification of and notice to the FLSA Collective Action Classes and Rule 23 Classes, as further defined and determined by motions practice and to properly inform them of their rights;

g.  For an Order tolling the statute of limitations on Plaintiffs' FLSA claims (and those who have joined in the suit) to the date of filing of this Suit; and

h.  For an Order granting such other and further relief as may be necessary and appropriate.

## X.   DEMAND FOR TRIAL BY JURY

156.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted,

/s/ Casey Rose Denson
**Casey Rose Denson (La. Bar #33363)**
**Mercedes Townsend (La. Bar #39054)**
**CASEY DENSON LAW, LLC**
4601 Dryades Street
New Orleans, LA 70115
Phone: (504) 224-0110
Fax: (504) 534-3380
cdenson@caseydensonlaw.com
mtownsend@caseydensonlaw.com

*Attorneys for Plaintiffs Cheyenne Denson, Joel White, Hannah White, and Jeffrey Flagg*